UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MIKE ERVIN,                                                        Case No. 1:09-cv-591

    Plaintiff,                                              Barrett, J.
                                                              Wehrman, M.J.
vs.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND NOT TO BE SUPPORTED BY SUBSTANTIAL EVIDENCE, AND REVERSED; (2) THIS MATTER BE REMANDED TO THE ALJ UNDER THE FOURTH SENTENCE OF 42 U.S.C. §405(g); AND (2) THIS CASE BE CLOSED**

This is a Social Security appeal filed by plaintiff, through counsel, proceeding pursuant to 42 U.S.C. § 405(g). At issue is whether the administrative law judge ("ALJ") erred in finding that plaintiff was not entitled to Disability Insurance Benefits ("DIB") or Supplemental Security Income ("SSI"). (*See* Administrative Transcript, Tr. at 7-18, ALJ's decision).

### I. Factual and Procedural Background

Plaintiff filed applications for DIB and for SSI on August 16, 2006, alleging a disability onset date of July 1, 2005, due to "shoulder slap lesion and impingement syndrome." (Tr. 94, 99, 121). Plaintiff was 45 years old at the time of his alleged disability. Plaintiff then requested a hearing *de novo* before an ALJ. (Tr. 65). An evidentiary hearing, at which plaintiff was represented by counsel, was held on November 18, 2008. In addition to testimony by the plaintiff, the ALJ heard testimony from a vocational expert. (Tr. 19).

On December 23, 2008, the ALJ entered her decision denying plaintiff's claim. That decision stands as defendant's final determination consequent to denial of review by the Appeals

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

Council on June 16, 2009.  (Tr. 1-3.)

>The ALJ's "Findings," which represent the rationale of the decision, were as follows:
>
>1.      The claimant last met the insured status requirements of the Social Security Act on July 1, 2005, and will continue to meet them at least through December 31, 2009.
>
>2.      The claimant has not engaged in substantial gainful activity since July 1, 2005, the alleged onset date (20 CFR §§404.1571 and 416.971).
>
>3.      The claimant has the following severe impairments: status post left shoulder arthroscopy, elbow epicondylitis and bilateral carpal tunnel syndrome with release surgery, fibromyalgia, degenerative changes in the lumbar spine and status post left knee arthroscopy/meniscectomy (20 CFR §§404.1521 and 416.921).
>..............
>4.      The claimant does not have any impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P Appendix 1....
>
>.................
>
>After careful consideration of the entire record, this Administrative Law Judge finds that the claimant has the residual functional capacity to perform light exertional activity, i.e., lifting/carrying no more than 20 pounds occasionally, 10 pounds frequently, standing/walking no more than 6 hours in an 8 hour workday, sitting for no more than 6 hours in an 8 hour workday, but pushing and pulling is limited in the upper extremities to the lift carry amount, and the work must involve no more than occasionally reaching, handling, or fingering; and never climbing ladders, scaffolds, or rope or working on vibrating surfaces.
>..............................
>5.      The claimant is unable to perform any past relevant work....
>
>..............................
>
>6.      The claimant was born on July 12, 1959, and was forty-five years old, which is defined as a younger individual, on the alleged disability onset date on July 1, 2005....
>
>7.  The claimant has at least a high school education and is able to communicate in English.
>
>8.  Transferability of job skills is not material to the disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is

>"not disabled", whether or not the claimant has transferable job skills....
>
>9.  In view of the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform....

(Tr. 12-16).  In summary, the ALJ concluded that plaintiff was not under a disability as defined by the Social Security Regulations and was therefore not entitled to DIB or SSI. (Tr. 17).  On appeal, plaintiff maintains that the ALJ erred by failing to give sufficient weight to the opinion of plaintiff's treating physician.

## II.  Analysis

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971)(additional citation and internal quotation omitted).  In performing this review, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled.  As the Sixth Circuit has explained:

>The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion....  The substantial evidence standard presupposes that there is a "zone of choice" within which the Secretary may proceed without interference from the courts.  If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen,* 35 F.3d 1027, 1035 (6th Cir. 1994)(citations omitted).

Upon consideration of an application for disability benefits, the ALJ is guided by a sequential benefits analysis, which works as follows:  At Step 1, the ALJ asks if the claimant is

3

still performing substantial gainful activity; at Step 2, the ALJ determines if one or more of the claimant's impairments are "severe;" at Step 3, the ALJ analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the ALJ determines whether or not the claimant can still perform her past relevant work; and, finally, at Step 5 – the step at which the burden of proof shifts to the ALJ – the ALJ determines, once it is established that the claimant can no longer perform her past relevant work, whether significant numbers of other jobs exist in the national economy which the claimant can perform. *See Gwizdala v. Commissioner of Soc. Sec.,* No. 98-1525, 191 F.3d 452 at *2 n.1 (6th Cir. Sept. 16, 1999)(unpublished, *per curiam,* text available at 1999 WL 777534).

The claimant bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. § 404.1512(a). That is, he must present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

### A. Consideration of Non-examining State Consultants

Plaintiff's statement of errors first argues that the ALJ erred by giving the State agency medical opinions "little weight because other medical opinions are more consistent with the record as a whole, and evidence at the hearing level shows that the claimant is more limited than determined by the State agency consultants." Plaintiff faults the ALJ for failing to set forth which medical opinions he relied upon instead of relying on the State agency consultants. However, the State agency consultants determined that plaintiff was *not* disabled and that plaintiff was not as limited as the ALJ actually found plaintiff to be at the hearing, after

4

considering plaintiff's testimony and the opinions of treating physicians. For example, the Residual Functional Capacity Assessment completed by Dr. Albert reflected that plaintiff could occasionally lift 50 pounds and frequently lift 25 pounds. (Tr. 249). The ALJ properly explained that she took into consideration plaintiff's treating physician's indication that plaintiff should not do any heavy lifting or repetitive exercises with his left elbow. (Tr. 16).

The case law cited by plaintiff holds that an ALJ must follow a specific procedure in setting forth reasons for disregarding the opinion of a *treating* physician that the claimant is disabled. Plaintiff cites no case law to support the proposition that an ALJ has a similar legal duty when setting forth reasons for disregarding the opinion of a non-examining consulting physician whose opinion, if accepted, would be even more unfavorable to the claimant. Not surprisingly, the Sixth Circuit has held that the "good reasons" requirement of 20 C.F.R. §404.1527(d)(2) only applies to opinions of treating sources, and not to those of other types of medical sources." *See Smith v. Commissioner of Social Security*, 482 F.3d 873, 876 (6th Cir. 2007). Thus, the ALJ did not err when she explained that she was giving the opinions of the consulting physicians "little weight" and was instead taking into consideration the treating physician's opinion that plaintiff should not do heavy lifting or repetitive exercises with his left arm.

### B. Consideration of Left Arm Restrictions by Treating Physician

Plaintiff also contends that the ALJ erred by disregarding the opinion of his treating physician that he has no use at all of his left arm. Dr. Trinidad, one of plaintiff's treating physicians, responded to a questionnaire regarding plaintiff's limitations by stating in a post-operative report dated 10/5/06 that plaintiff had "just had 2nd surgery" and, with respect to work,

5

had no use of his upper left extremity. (Tr. 315-316). Additional records reflect that the surgery to which the 10/5/06 form referred was performed by Dr. Trinidad the previous week, on September 27, 2006.

Later records from the same treating physician reflect that plaintiff initially recovered from the 9/27/06 surgery well. A little more than a month after that surgery, on November 9, 2006, Dr. Trinidad found that plaintiff was doing well postoperatively with regard to his shoulder. (Tr. 298). However, plaintiff was presenting with a "different problem" of "bilateral hand pain, numbness, tingling and paresthesias" in his hands. Dr. Trinidad opined that his hand difficulties "may be...recurrence of the carpal tunnel syndrome" for which plaintiff had previously undergone surgery, but noted that EMGs of both hands were normal. *Id*.

Subsequent records from Dr. Trinidad relating to plaintiff's left arm continue to reflect persistent difficulties with plaintiff's left shoulder, but do not repeat the October 5, 2006 postoperative statement that plaintiff had "no use" of his left arm. For example, a January 16, 2007 MRI of the left shoulder showed degenerative changes and a likely small tear. (Tr. 292). On February 2, 2007, Dr. Trinidad noted that plaintiff's left shoulder motion was reduced, and he was encouraged to do exercises at home. (Tr. 295). An August 14, 2007 EMG test revealed mild left carpal tunnel syndrome and mild left ulnar neuropathy. (Tr. 336). On October 16, 2007, Dr. S. Woods saw plaintiff and noted that his shoulder motion was limited, but that he had full strength, with sensation only diffusely blunted over the upper extremities. (Tr. 332).

On February 5, 2008, Dr. Trinidad again examined plaintiff and found reduced left shoulder motion. (Tr. 370). At a follow-up appointment on March 4, 2008, Dr. Trinidad noted that plaintiff's left shoulder motion and strength were improved. (Tr. 369). On April 15, 2008,

Dr. Trinidad again found plaintiff was doing better and improving slowly with respect to the left shoulder. (Tr. 368). Left shoulder motion was reduced, but strength was improving. On June 13, 2008, EMG studies of the left shoulder, arm, and hand were normal. (Tr. 364).

In *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004), the Sixth Circuit reversed and remanded when the agency failed to follow its own procedural regulation by providing "good reasons" for failing to give weight to the limitations found by the treating physician. In this case, the ALJ did not explicitly discuss Dr. Trinidad's 10/6/06 opinion that plaintiff had "no use" of his left arm. The ALJ noted that "pushing and pulling is limited in the upper extremities to the lift carry amount" of 20 pounds occasionally and 10 pounds frequently, but did not specifically note any other restrictions. Instead, the ALJ's opinion explains that the treating physician's restrictions on heavy lifting or repetitive exercises with the left elbow have been taken into account with the weight restrictions on pushing and pulling. (Tr. 16). The ALJ's opinion also fails to discuss plaintiff's inability to reach overhead and specifically found that plaintiff could do "occasional reaching," even though virtually all of plaintiff's medical records, including the State consulting physician's RFC, support a restriction of no overhead reaching. (Tr. 35, 251). While subsequent records by Dr. Trinidad may be viewed as supporting the ALJ's lesser restrictions, the ALJ's failure to explicitly discuss the October 2006 restriction technically violates the agency's procedural regulation under *Wilson*. *See also Hensley v. Astrue*, 573 F.3d 263 (6th Cir. 2009).

The Commissioner argues that in this case remand and reversal is not required because the technical violation is only "*de minimis*." *See Wilson*, 378 F.3d at 547. The Commissioner notes that the ALJ specifically took into account an October 2005 recommendation by Dr. Trinidad that plaintiff do no heavy lifting or repetitive exercises, to the extent that she imposed weight restrictions. (Tr. 16, 312). The Commissioner urges this court to conclude that the ALJ

7

"sufficiently" discussed Dr. Trinidad's reports, arguing that no purpose would be served by remanding merely so that the ALJ can explicitly address the reasons for rejecting Dr. Trinidad's "no use" restriction.

The Commissioner's argument has some appeal. A review of the record on the whole suggests that Dr. Trinidad's "no use" restriction might have been rejected by the agency as one intended to reflect only the immediate post-operative period. Likewise, the ALJ may have rejected the restriction as not in accordance with other medical evidence including subsequent reports from Dr. Trinidad himself.

Nonetheless, I find that remand is required in this case because otherwise, this court is left wholly to speculate on the reasons for the ALJ's rejection of the "no use" restriction by the treating physician. The Sixth Circuit has made clear that courts should "not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion" and has made abundantly clear that courts should remand whenever they "encounter opinions from ALJ's [sic] that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion." *Hensley v. Astrue*, 573 F.3d at 267 (*quoting Wilson*, 378 F.3d at 545). Accordingly, this matter should be remanded for further fact finding in order to afford the ALJ an opportunity to provide a proper explanation of the reasons for her rejection of Dr. Trinidad's 2006 opinion that plaintiff has "no use" of his left arm.

In addition, on remand the ALJ should more fully explain whether she has considered all of plaintiff's left arm restrictions including but not limited to his alleged inability to reach overhead. In assessing a Plaintiff's RFC, the adjudicator *must consider limitations and restrictions imposed by all of an individuals impairments, even those that are not severe*. SSR

96-8p (emphasis added).

### C. Miscellaneous Alleged Limitations

Plaintiff also argues that he is unable to sit, stand, or drive for extended periods of time, is unable to grip objects, and is unable to handle heavy weights. The ALJ did take into consideration plaintiff's inability to handle "heavy" weights, finding that plaintiff retained the residual functional capacity only to do "light" work and to lift or carry no more than 20 pounds occasionally and 10 pounds frequently. Plaintiff shows no error with respect to the ALJ's restrictions on his ability to handle heavy weights.

Likewise, plaintiff fails to cite to any record evidence that was disregarded by the ALJ in support of his claim that he is severely limited in his abilities to sit, stand or drive. Significantly, there appears to be no medical evidence to support such severe limitations. For example, the questionnaire completed by Dr. Trinidad on 10/5/06 inquired about limitations on the plaintiff's ability to "sit, stand, walk, bend, stoop, grasp, etc." but noted no such limitations. (Tr. 316).

On December 6, 2006, plaintiff saw Dr. Trinidad for left knee pain. X-rays showed mild to moderate osteoarthritis. (Tr.297). Dr. Trinidad performed left knee surgery on plaintiff on January 18, 2007, and on February 2, 2007, noted that plaintiff was doing better with respect to his left knee. (Tr. 295). On October 16, 2007, when examined by Dr. S. Woods, plaintiff was noted to have a "normal gate" with full cervical motion. (Tr. 331-32). Although the burden of proving that an impairment is "severe" is a relatively light one, it rests with the plaintiff, not with the Commissioner. *Walters v. Commissioner of Soc. Sec*., 127 F.3d 525, 529 (6th Cir. 1997). The ALJ's findings concerning plaintiff's ability to sit, stand, and drive appear to be supported by substantial evidence; plaintiff points to no evidence whatsoever to support the limitations that

he claims.

### D. Consideration of Pain Level

Plaintiff alleges generally that he is unable to maintain concentration as a result of his pain level. The ALJ determined that plaintiff's complaints of disabling pain were not fully credible based upon the medical evidence and plaintiff's testimony. (Tr. 14-15). The issue is not whether the record could support a finding of disability, but rather whether the ALJ's decision is supported by substantial evidence. *See Casey v. Secretary of Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). The ALJ properly evaluated plaintiff's allegations in accordance with controlling law, and she reasonably concluded that they were not fully credible. The ALJ's credibility finding is entitled to deference and thus should be affirmed. *See Jones v. Commissioner of Social Security*, 336 F.3d 469, 476 (6th Cir. 2003)(ALJ's determinations of credibility to be given great weight).

### III.  Conclusion and Recommendation

A sentence four remand provides the required relief in cases where there is insufficient evidence in the record to support the Commissioner's conclusions and further fact-finding is necessary. *See Faucher v. Secretary of Health and Human Servs.,* 17 F.3d 171, 174 (6th Cir. 1994) (citations omitted). In a sentence four remand, the Court makes a final judgment on the Commissioner's decision and "may order the Secretary to consider additional evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place." *Faucher,* 17 F.3d at 175.

It is therefore **RECOMMENDED** that the decision of the Commissioner to deny plaintiff DIB and SSI benefits be **REVERSED**, and this matter be **REMANDED** under sentence

four of 42 U.S.C. § 405(g).  **IT IS FURTHER RECOMMENDED** that, on remand, the ALJ be instructed to: (1) properly weigh the medical evidence and give specific reasons for the weight given to Dr. Trinidad's medical opinion as required by 20 C.F.R. § 404.1527(d)(2)-(6); and (2) consider all relevant limitations concerning plaintiff's left arm restrictions in his RFC.


Date:  July 2, 2010                                                     s/ J. Gregory Wehrman
                                                                         United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

**MIKE ERVIN,**   Case No. 1:09-cv-591

    **Plaintiff,**   Barrett, J.
  Wehrman, M.J.

**vs.**

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## NOTICE

Attached hereto is the Report and Recommended Decision of the Honorable J. Gregory Wehrman, United States Magistrate Judge. Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations **within 14 days** after being served with this Report and Recommendation. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections **within 14 days** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).